UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VINCENT A. TURNER,
o/b/o Debora Ann Turner
(deceased),

      Plaintiff,

v.                       Case No.:  2:22-cv-461-KCD

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## ORDER

Plaintiff Vincent A. Turner, o/b/o Debora Ann Turner,[1] sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits. (Doc. 1.)[2] For the reasons below, the Commissioner's decision is affirmed.

## I. Background

Turner filed her initial application for disability benefits in 2011, alleging an onset date of August 1, 2005. (Tr. 130, 138, 268-71.) Her date last

---

[1] Debora Ann Turner committed suicide in 2017. Her husband, Vincent, substituted as claimant after her death, and the ALJ found him to be a qualified substitute party. (Tr. 779, 916.)

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

insured was June 20, 2010, making the relevant period August 2005 to June 2010.

The administrative proceedings (ongoing for the past twelve years) are lengthy. The Commissioner denied Turner's initial application. (Tr. 164-69, 171-76.) And following a hearing before an ALJ in 2014 (Tr. 63-111), she was found not disabled. (Tr. 142-51.) The Appeals Council, however, granted a request for review and remanded. (Tr. 157-61.)

On remand, a different ALJ conducted a new hearing. (Tr. 28-62.) Turner was again found not disabled and she again appealed. (Tr. 10-21.) But this time the Appeals Council denied review. (Tr. 863-65.) Turner then filed suit in this Court and won. (Tr. 869-71). Thus, the case was remanded for a second time for further proceedings. (Tr. 873-92.)

Following another hearing on remand (Tr. 803-41), a new ALJ issued the unfavorable decision now under review. (Tr. 779-95.) To assess Turner's claim, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[3] The ALJ found that although

---

[3] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform

Turner's bipolar disorder qualified as severe, she retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with several non-exertional limitations:

> the claimant was able to understand, remember, and carryout simple and repetitive instructions or tasks; was able to make judgments on simple and repetitive work-related decisions in such work environment; was able to interact appropriately with others in such work environment; was able to respond and adapt to routine work situations and to occasional changes in work setting without special supervision and with simple and repetitive instructions or tasks; and was able to perform such activities within a regular schedule and be punctual within customary tolerances. "Simple" is defined as requiring between 1-3 steps.

(Tr. 787.)

After considering the RFC and other evidence, including vocational expert (VE) testimony, the ALJ concluded that Turner would be capable of successfully transitioning to other jobs that exist in significant numbers in the national economy. (Tr. 794.) Thus, Turner was not disabled as that term is defined in this context. (Tr. 794.) She exhausted her administrative remedies, and this second lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42

---

given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Turner raises four issues on appeal: (1) whether the ALJ de facto reopened Turner's prior application; (2) whether substantial evidence supports the ALJ's evaluation of the side effects of Turner's medication; (3) whether substantial evidence supports the ALJ's evaluation of Dr. Nelson Hernandez's opinion; and (4) whether substantial evidence supports the ALJ's step-five-finding. (Doc. 15.) Each issue is addressed in turn.

### A. De Facto Reopened Claim

Turner filed a prior application for disability benefits in May 2007, which was denied three months later. (Tr. 125, 133.) That denial became final when Turner did not appeal. Turner alleges that because the ALJ's decision under review here covers the period from 2005 to 2010, the ALJ "*de facto*" reopened the 2007 application and erred by not incorporating that file into the evidence. (Doc. 15 at 6-9.) Turner says that while some of the record here contains evidence from the 2007 claim (Tr. 486-525), not all is included. Turner believes that the State agency must have adjudicated Turner's mental impairments and the prior file would contain a consultant's opinion, *citing* 20 C.F.R. § 404.1617(a) (requiring the State agency to take every reasonable effort to ensure that medical, and when mental impairments are involved, psychological consultants complete the medical portion of the case review). She

argues that failing to include that opinion caused prejudice and warrants a remand for consideration of Turner's claim. (Doc. 15 at 6-9.)

There are three exhibits (1F, 2F, 3F) attached to the ALJ's decision described as "prior folder medical evidence" that cover the years 2003-2007, which seem to be evidence from the 2007 claim. (Tr. 801.) The ALJ considered this evidence in the decision. (Tr. 785, 788, 791, 792, 793.)

The problem for Turner is there is no indication she requested a reconsideration of the merits of the 2007 denial, and the ALJ did not even discuss the 2007 denial in the decision here. In fact, at the hearing before the first ALJ in 2014, the ALJ mentioned the 2007 denial, but then acknowledged that that there was now a new application. (Tr. 1020.) Turner, represented by counsel at the hearing, made no request at that time to reopen the 2007 application, likely because such a request would have been treated as untimely. A determination, revised determination, decision, or revised decision may be reopened: (1) within 12 months of the notice of the initial determination, for any reason; (2) within 4 years of the initial determination, with good cause; or (3) at any time if the decision was obtained by fraud, or similar fault, or other exceptions inapplicable here. 20 C.F.R. § 404.988; *Mielbeck v. Comm'r of Soc. Sec.*, No. 2:20-cv-987-JLB-MRM, 2022 WL 8206071, at *9 (M.D. Fla. 2022). Here, the ALJ suggested nowhere in the decision he intended to reopen any prior decision. And in any event, the ALJ would have

lacked the ability to reopen the prior decision because the date of the decision (April 1, 2020), was beyond four years since the 2007 denial, and there is no evidence of any fraud. (Tr. 125, 133, 795.) *See* 20 C.F.R. § 404.988.

Still, Turner cites *Wolfe v. Chater*, 86 F.3d 1072 (11th Cir. 1996), and argues the ALJ did a de facto reopening. (Doc. 15 at 6-9.) "[F]ederal courts lack subject matter jurisdiction to review a denial of a request to reopen except where: (1) the claimant raises a colorable constitutional claim, or (2) the Commissioner *de facto* reopens and reconsiders the merits of the prior administrative determination or decision." *Bello v. Comm'r of Soc. Sec.*, 460 F. App'x 837, 840 (11th Cir. 2012). "Generally, a final decision by the Secretary will be deemed reopened if it is reconsidered on the merits to any extent and at any administrative level." *Id.*

Nothing here, however, indicates the ALJ reconsidered the merits of the prior decision, as required for a de facto reopening of the 2007 denial. *See Wolfe*, 86 F.3d at 1079. That the ALJ considered some evidence from the 2007 denial does not change this result. *See Carson v. Colvin*, No. 8:15-cv-751-T-33TGW, 2016 WL 3525288, at *5 (M.D. Fla. May 16, 2016) (finding the ALJ did not de facto reopen the prior decision where he compared the evidence in the prior decision to the medical evidence in the immediate application); *Huebner v. Astrue*, No. 8:11-cv-00872-T-17, 2012 WL 3893565, at *5 (M.D. Fla. Aug. 20, 2012) (finding an ALJ did not de facto reopen the prior application even though

the ALJ "evaluated evidence from a period overlapping the Plaintiff's previous application for Title XVI benefits"). Thus, Turner shows no error.

## B. Medication Side Effects

Turner next argues that the ALJ failed to address the alleged side effects caused by her medication. (Doc. 15 at 9-12.) In support, Turner points to her testimony that side effects prevented her from working because they made her dizzy, wobbly, and drowsy. (Tr. 1028-29.) Turner also points to other subjective statements she and her husband made in the record. (Tr. 328, 340, 349.) The ALJ's decision mentions side effects one, stating that Turner denied any side effects from her medication in 2007. (Tr. 788.)

This issue turns on Turner's subjective statements and whether those statements are supported by substantial evidence. To determine disability, the Social Security Administration (SSA) considers symptoms, including pain, and how much the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Statements about symptoms alone cannot establish disability. Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce" the symptoms and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 404.1529(a), (b). To determine how much symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about

the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 404.1529(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony. *Foote*, 67 F.3d at 1561-62. A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ found, "[a]fter careful consideration of the evidence, . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 788.) The ALJ continued, "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

The ALJ articulated explicit and adequate reasons for rejecting Turner's testimony about medication side effects. The ALJ summarized Turner and her spouse's statements, including that her anxiety and bipolar disorder prevented her from working (Tr. 786, 787-88, 792). *See id.* § 404.1529(a) ("We will consider all your statements about your symptoms"). The ALJ also detailed the medical

evidence. (Tr. 788-91). *See id.* § 404.1529(c)(1) (noting the Commissioner will consider all the available evidence from providers).

Further, as the ALJ noted, Turner stated in 2006 and 2007 that her medications were helping, and she reported no adverse side effects. (Tr. 508-10, 788.) Likewise, Turner's examinations routinely noted she was alert and oriented, with normal psychomotor ability, (Tr. 495-96, 499-500, 535-37), and she cites to nothing to show she ever complained of side effects to any provider during the relevant period. *See Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 522 (11th Cir. 2017) (noting medical records did not corroborate claimant's allegations of side effects). Accordingly, because the medical evidence fails to support, and in fact contradicts, Turner's allegations, she shows no error.

## C. Dr. Hernandez's Opinion

The Social Security Regulations for evaluating medical opinions changed in March 2017. Because Turner's claim was filed before that time, the prior regulations apply. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ considers every medical opinion received

together with the rest of the relevant evidence. *Id.* § 404.1527(b)-(c). An ALJ

assesses a medical opinion by looking at several factors, including:

> (1)  examining relationship—giving more weight to opinions from a medical source that has examined the claimant than one that hasn't;
>
> (2)  treatment relationship—generally giving more weight to opinions from a medical source that treats the claimant than one that doesn't;
>
> (3)  supportability—giving more weight to opinions supported by other evidence from the medical source, particularly medical signs and laboratory findings;
>
> (4)  consistency—giving more weight to opinions that are consistent with the record as a whole;
>
> (5)  specialization—generally giving more weight to opinions from a specialist about medical issues in their area of specialty than to opinions from a medical source who is not a specialist;
>
> (6) any other factors that support or contradict the medical opinion.

*Id.* § 404.1527(c)(1)-(6).

The second factor is particularly relevant here because Turner claims

Dr. Hernandez is a treating source. The Eleventh Circuit set a "good cause"

standard for disregarding this kind of evidence:

> Absent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may

> disregard a treating physician's opinion, but he must
> clearly articulate [the] reasons for doing so.

*Winschel*, 631 F.3d at 1179. Regardless of the ALJ's ultimate conclusion, he must state the weight given to each medical opinion. And the ALJ must explain the reasoning in enough detail for a reviewing court to determine whether substantial evidence supports it. *Id.*

Dr. Hernandez, a psychiatrist, treated Turner from 2009 to 2012. (Tr. 526-45, 562-78.) In January 2012, Dr. Hernandez gave a medical opinion by completing a checklist form titled "mental residual functional capacity assessment." (Tr. 551-52.) Dr. Hernandez also completed three psychiatric review technique worksheets for listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). (Tr. 553-57.)

On the mental RFC assessment form, Dr. Hernandez checked boxes indicating Turner would be constantly or markedly limited in nearly every category (understanding and memory, sustained concentration and persistence, social interaction, and adaptation). (Tr. 551-52.) The only explanation Dr. Hernandez provided was that Turner had poor concentration and memory, she was easily distracted, and she had anxiety with frequent relapses and flare ups of her condition. (Tr. 552.) For the listing forms, he checked boxes indicating Turner met several listings, but he provided no explanation, simply referring to the mental RFC form. (Tr. 554-57.)

For all forms, Dr. Hernandez was asked if Turner has been disabled or had the condition existed since August 2005, to which Dr. Hernandez wrote "unknown." (Tr. 552, 553, 555, 557.) He stated that he did not review medical records before or after the onset date of disability and did not indicate the time frame to which his opinion applied. (Tr. 552, 553, 555, 557.)

The ALJ gave the mental RFC assessment little weight because "it is conclusory and is inconsistent with the treatment notes of Dr. Hernandez which consistently showed unremarkable mental status examinations in 2009, 2010, and into 2011." (Tr. 791.) The ALJ gave the opinion about the listings no weight as Dr. Hernandez stated it is unknown if the conditions existed since August 2005, and because "they are inconsistent with and not supported by his treatment notes and examination findings noted in this decision." (Tr. 791.) This conclusion is improper, Turner contends, because Dr. Hernandez's opinions are consistent with the doctor's own records and other evidence in the record. (Doc. 15 at 16-18.) Turner further contends that bipolar disorder presents with episodic bad days, unconsidered by the ALJ.

Turner again shows no error. Substantial evidence supports the ALJ's conclusion that Dr. Hernandez's opinions were inconsistent with his own records and other objective findings in the record, which support good cause. As detailed by the ALJ, and confirmed by a review of the record, in Dr. Hernandez's initial evaluation of Turner in August 2009, she reported she was

feeling great. (Tr. 540, 786, 789.) Dr. Hernandez observed Turner to be oriented, with full affect, and he noted she displayed normal speech, judgment, insight, and perception, organized thoughts, intact cognition, and relevant thought content. (Tr. 543, 789.) Dr. Hernandez assessed she had no anxiety, depression, delusions, or suicidal or homicidal ideation. (Tr. 543, 789.) Subsequent treatment notes in 2010, and before the expiration of Turner's date last insured, reveal normal mental examinations with normal memory, good insight and judgment, intact thought process, and good thought content. (Tr. 536-37, 786, 789-90.) As Turner recognizes, the only abnormalities Dr. Hernandez mentioned during the relevant period were that Turner had some impaired recent memory or mild anxiety. (Tr. 537, 543.) Turner even conveyed to Dr. Hernandez she wanted to get a job. (Tr. 537.)

Besides Dr. Hernandez's records, other medical evidence, as discussed by the ALJ, show that Turner was not as limited as Dr. Hernandez alleged. In 2005, Turner was seen at Orion Family Practice, where she displayed a normal mood and orientation, and the treatment notes reflected no psychiatric problems. (Tr. 495-96, 788.) In other 2005 visits, she reported having no depression, fatigue, mania, or suicidal or homicidal ideations, and she had adequate motivation. (Tr. 510-11, 788.) In 2006, she reported no issues other than seasonal depression or anxiety. (Tr. 509, 788), and she said she felt normal most days, or even "really good," she was sleeping well, and her mood

14

was stable. (Tr. 509, 788.) Similarly, in 2007, she reported her mood remained stable, she was sleeping well, and medication was helping. (Tr. 508, 788.) She underwent a psychological consultative examination with Dr. Michael Matouk in 2007, and the examination findings revealed she was oriented, friendly, and cooperative. (Tr. 520, 788-89.) The examination also revealed she had generally intact neurocognitive functioning with average intellectual abilities. (Tr. 524-25, 789.)

Substantial evidence also supports the ALJ's conclusion that Dr. Hernandez's opinions were conclusory. *See* 20 C.F.R. § 404.1527(c)(3); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (providing good cause exists to discount treating physician opinions that are conclusory and not bolstered with evidence). Dr. Hernandez merely checked boxes and provided a short, general explanation in the forms. (Tr. 551-52.) No further information was provided. (Tr. 551-57.) The ALJ, therefore, properly found this opinion was conclusory. *See, e.g., Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (noting doctor's opinions were conclusory because the forms did not reference his treatment records or offer adequate explanation); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Hammersley v. Astrue*, No. 508-CV-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (noting "courts have found

that check-off forms … have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Turner argues that general statements about normal mental status exams are usually insufficient to reject a treating doctor's opinion. (Doc 15 at 16.) This argument is unpersuasive. Dr. Hernandez's records are filled with detailed, handwritten notations about how well Turner was doing, unlike form examination findings usually found in medical records. And none of Dr. Hernandez's records come close to describing the extreme functional limitations to which he opined.

Turner also argues that normal mental status examinations are not generally inconsistent with Dr. Hernandez's opinions because of the episodic nature of bipolar disorders that the ALJ did not account for. (Doc. 15 at 16-17.) To be sure, "the ALJ must consider the episodic nature of bipolar disorder." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020). "Evidence that the claimant 'seemed to be doing better' during certain times does not support a finding that her impairment is not severe." *Id.* When the Commissioner's decision is supported by substantial evidence, however, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against"

the Commissioner's decision. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Here, the ALJ considered records showing that Turner was both doing well and doing poorly at times and found an RFC that "accounted for the claimant's bipolar disorder by limiting her to understanding, remembering, and carrying out simply and repetitive instructions or tasks, making judgments on simple and repetitive work-related decision in such work environment, and she would have been able to interact appropriately with others in such work environment." (Tr. 793.) Thus, the ALJ provided enough discussion to permit a meaningful judicial review into whether the ALJ properly considered her bipolar disorder.

Although there are medical records showing a decline in Turner's health at times, which the ALJ recognized (Tr. 788-91), the issue is not whether some evidence might support Turner's allegations but whether substantial evidence supports the ALJ's findings. *See Dyer*, 395 F.3d at 1211.

## D. Step-Five Finding

At step five, the ALJ found Turner unable to perform her past relevant work because the demands exceeded her RFC. (Tr. 793.) Yet, the VE testified that three occupations represent jobs that an individual of Turner's age, education, work experience, and RFC can perform: dishwasher, floor waxer, price marker, and collator. (Tr. 834.) The VE confirmed that these jobs have a

special vocational preparation[4] (SVP) of 1 or 2 and require no more than three steps to complete—right in line with Turner's RFC. (Tr. 834-35.)

Turner argues a conflict exists between the VE's testimony and the DOT regarding the positions of collator, dishwasher, and price marker, and that the ALJ had to identify and resolve the conflict under Social Security Ruling (SSR) 00-4p, 65 Fed. Reg. 75,759-01 (Dec. 4, 2000), and *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). (Doc. 15 at 20-23.) Turner says there is a conflict because the DOT's job descriptions require more than three steps, which is beyond her RFC. (Doc. 15 at 19-24.)

ALJs have an affirmative duty to identify and resolve apparent conflicts between a claimant's limitations and the demands of occupations—as defined in the DOT—that a VE offers as examples of the work that a claimant can perform. *Washington*, 906 F.3d at 1356. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

"[T]he VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job." *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 796

---

[4] "Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific jobworker situation." Appendix B, Specific Vocational Preparation, SCODICOT. An SPV level of 1 means short demonstration only. *Id.* An SVP level of 2 means anything beyond short demonstration up to one month. *Id.*

(11th Cir. 2011); *see also Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) (explaining that "[t]he DOT itself states that it is not comprehensive" and "the [Social Security Administration] itself does not consider the DOT dispositive").

Turner shows no error. As she admits, the DOT says the positions of collator, dishwasher, and price marker are reasoning level two. *See* U.S. Dep't of Labor, DOT § 318.687-010, 1991 WL 672755 (dishwasher); § 209.587-034, 1991 WL 671802 (price marker); § 208.685-010, 1991 WL 671753 (collator). During the hearing, the ALJ asked the VE whether there were any conflicts between her opinion testimony and the demands of the occupations as described by the DOT, to which the VE answered no. (Tr. 835.) Upon questioning by Turner's attorney, the VE confirmed that her testimony was consistent with the DOT. (Tr. 840.) Turner's counsel did not object to the VE's testimony, nor challenge her credentials to act as a VE at the hearing. Turner offers no more than speculation that the jobs could involve more than three steps. Further, in response to counsel's questioning at the hearing, the VE explained the DOT included a lot of "mays" in describing possible tasks, and thus not every conceivable step would always be included. (Tr. 837-38.) But her testimony remained that the jobs require no more than three steps. The VE testified that—based on her over 35 years of experience, and her placement of individuals in these exact positions—Turner's interpretation included additional, unnecessary steps not present in the DOT. (Tr. 840.)

Courts to consider whether there is a conflict on facts like those here are consistent with the VE's conclusion. *See, e.g.*, *Surprise v. Saul*, 968 F.3d 658, 662-63 (7th Cir. 2020) (holding there is no conflict between a one-to-three-step instruction limitation and a job requiring reasoning level two, and there was no authority to support the claimant's argument); *Alan R. v. Kijakazi*, No. 2:20-CV-0382-JAG, 2022 WL 949819, at *4-5 (E.D. Wash. Mar. 28, 2022) (holding reasoning level two jobs were consistent with the ability to perform tasks with one- to three-step instructions). But "[e]ven assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it trumped any inconsistent provisions of the DOT." *Misla v. Comm'r of Soc. Sec.*, No. 6:17-CV-979-ORL-DCI, 2018 WL 4361024, at *5 (M.D. Fla. Sept. 13, 2018); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 796 (11th Cir. 2011) (explaining that, if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the VE trumps the DOT because the DOT is not the sole source of admissible information related to jobs).

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings and the correct standards were applied. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter

20

judgment for the Commissioner and against Vincent A. Turner, o/b/o Debora

Ann Turner (deceased) and close the file.

**ORDERED** in Fort Myers, Florida this July 19, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record